■ STEVEN WIDES, Appellant, v FERN WIDES, Respondent. — In a matrimonial action, plaintiff husband appeals from an order of the Supreme Court, Nassau County (Morrison, J.), dated March 18, 1982, which, *inter alia,* adjudged him guilty of contempt and directed his incarceration for a period of 10 days. (We deem the notice of appeal to be a premature notice of appeal from the order.) Order modified, on the law, by deleting the fourth decretal paragraph thereof. As so modified, order affirmed, without costs or disbursements. Defendant wife moved in December, 1981 for, *inter alia,* leave to enter a money judgment for arrears in child support accruing under a November, 1981 divorce judgment. She also sought enforcement of the monetary provisions of the divorce judgment by, *inter alia,* punishment of plaintiff for civil contempt pursuant to section 756 of the Judiciary Law. At a hearing on the application conducted in March, 1982, plaintiff admitted that he had failed to pay $100 weekly for the support of his children as directed by a temporary support order of August, 1981 and the judgment of divorce. Specifically, he ceased all payments in October, 1981 and paid only $40 weekly commencing February, 1982. Plaintiff justified his noncompliance by asserting that defendant interfered with provisions of the judgment granting him visitation and telephone privileges with his children. He also gave testimony relevant to his cross motion for downward modification of his support obligation. Insofar as it is pertinent to our decision here, the testimony by plaintiff initially established that he resided principally in Lawrence, New York, but also lived in an apartment in Waterville, Maine. Plaintiff claimed that he was not employed at the time of the hearing and his income was limited to cash borrowed from his father to cover living expenses. Plaintiff was unable to give a satisfactory account of those expenses. He said he had no open credit card or bank accounts or interest in any business, although he maintained one bank account in Lawrence with enough money to cover the weekly payments of $40 toward the support of his children. He said his father owned a residence in Merrimack, New Hampshire, and claimed he had been there only occasionally, although its furnishings were in part supplied by his new spouse. Plaintiff admitted being informed by his children's psychiatrist that his children were suffering from disabilities and that his noncompliance with the support order was "extremely detrimental" to their survival. Defendant's attorney accused plaintiff of committing a fraud upon the court when inspection of plaintiff's wallet at the hearing disclosed numerous credit cards, including a "gold" American Express card issued by the European American Bank, valid from February, 1982 through January, 1984. Defendant sought and was granted a continuance to summon an investigator from New Hampshire to counter plaintiff's testimony. On the adjourned date, plaintiff admitted that he lied with respect to his bank and credit accounts, his and his new spouse's motor vehicles, and his life insurance. He insisted that he could not recall the source of nearly $10,000 in deposits during one month in mid-1981. He likewise insisted that his father purchased the New Hampshire home, but he admitted that he himself had resided in that house from June, 1981. He also admitted that he had brought a million dollar lawsuit arising from a restaurant that he opened in May, 1980

and abandoned at a loss of $185,000 in January, 1981 because of marital difficulties leading to a suicide attempt. He then admitted that his purported suicide attempt occurred months before the loss in question. Justice Morrison, in an oral decision, declared that he had been "shocked at what I've heard and seen, particularly in considering that we have two infants here who are in need of and desire the utmost in health and assistance, obviously being deprived of both". He found that plaintiff had "flout[ed] the orders of this Court" in refusing to honor his support obligation and had "engaged in a process of concealing his ability to pay at every turn, and has admittedly lied in this court in an effort to carry out that overall purpose". The court ruled: "I think the plaintiff has been in open contempt of this Court and I so find you. I also find that the defendant is unable to enforce her decree by the usual methods * * * I'm going to be compelled under the circumstances to impose a jail sentence on the plaintiff of ten days in the County Jail, and the plaintiff will remain in the County Jail until he has made up the arrearages * * * I'm going to expressly state that the penalty being imposed in this matter is simply on the basis of the contempt that the plaintiff has perpetrated in failing to make the payments and has no basis in what I believe to be the perjury that was committed by the plaintiff in this Court, and in that respect, I'm going to refer the matter to the District Attorney's office". The order signed by Special Term committed plaintiff to the county jail for 10 days "for his open contempt of this Court", and additionally directed that he be jailed until he paid arrears of $840. That provision of Special Term's order committing plaintiff to the county jail for a definite term of imprisonment of 10 days for his open contempt of court must be stricken as an unauthorized punishment imposed upon him for his failure to obey the prior judgment's direction for payment of child support. Enforcement of a judgment directing the payment of money is accomplished through execution rather than through contempt proceedings, absent statutory provision to the contrary (CPLR 5104; SCPA 606; *National Sur. Corp. v Silver,* 23 AD2d 398, revd on other grounds 17 NY2d 477). Since a direction to pay money is itself not a mandate issuing from a court, as that term is used in the criminal and civil contempt provisions of the Judiciary Law (see Judiciary Law, § 750, subd A, par 3; § 756), contempt proceedings cannot be initiated against a recalcitrant judgment debtor absent a violation or impairment of legal process issued under the judgment, such as an execution pursuant to CPLR 5230 (subd [b]) (see CPLR 5251; *O'Gara v Kearney,* 77 NY 423; *Matter of Watson v Nelson,* 69 NY 536, 542-543; *Hennig v Abrahams,* 246 App Div 621, affd 270 NY 626; *Williamson Mill & Lbr. Co. v Valentine,* 206 App Div 252; *Le Gros v Chain Shirt Shops,* 187 App Div 368; *Matter of Ryan,* 73 App Div 137, 139; *Matter of Kramsky,* 172 Misc 935, 937-938; *Dollard v Koronsky,* 67 Misc 90; *Gresswell v O'Rourke,* 163 NYS 580). The use of contempt proceedings to enforce monetary obligations created by a matrimonial order or judgment, however, has been expressly authorized since 1880 by section 245 of the Domestic Relations Law and its predecessors, section 1172 of the Civil Practice Act and section 1773 of the Code of Civil Procedure (see *People ex rel. Lagos v Lagos,* 24 AD2d 886; *Stewart v Stewart,* 127 App Div 724; *Stanley v Stanley,* 116 App Div 544; *Matter of Sims,* 57 Hun 433; *Jacquin v Jacquin,* 36 Hun 378; *Ryckman v Ryckman,* 32 Hun 193; *Ryckman v Ryckman,* 34 Hun 235, affd 98 NY 639). This authorization, however, does not extend to the imposition of a definite term of imprisonment. The power of the court to punish a civil contempt is limited by subdivision 1 of section 774 of the Judiciary Law, which restates the substance of its predecessor provisions (Code Civ Pro, § 2285; 2 Rev Stat of NY [1829], part III, ch VIII, tit XIII, § 23, p 538). Subdivision 1 of section 774 of the Judiciary Law states: "Where the misconduct proved consists of an omission to perform an act or duty, which is yet in the power of the

offender to perform, he shall be imprisoned only until he has performed it, and paid the fine imposed". In construing the language in the predecessor section of the Code of Civil Procedure, the Court of Appeals stated: "In these cases the authority of the court is indeed vindicated, but it is, after a manner, lent to the suitor for his safety, and vindicated for his sole benefit. The authority is exerted in his behalf as a private individual, and the fine imposed [if any] is measured by his loss and goes to him as indemnity; and imprisonment, if ordered, is awarded, not as a punishment, but as a means to an end, and that end the benefit of the suitor in some act or omission compelled which are [*sic*] essential to his particular rights of person or of property. This clearly appears from the mode of enforcing the suitor's remedy prescribed by the statute * * * The imprisonment, where the act or duty can yet be performed, must end with the performance of the act and payment of the fine; but if the act or duty cannot be performed, then the imprisonment must not exceed six months and until the fine be paid. In this last provision there is a trace of the element of punishment, but it is for the violation of the private right of the party and to check similar violations in the future, and has no respect to public offenses or the vindication of public wrongs" (*People ex rel. Munsell v Court of Oyer & Terminer of County of N. Y.,* 101 NY 245, 247-248; see, also, *Burns v Burns,* 270 App Div 1017; *Ditomasso v Loverro,* 242 App Div 190, 194; *Stewart v Smith,* 186 App Div 755, 759). Violation of an injunction or impairment of lawful process, rather than failure to honor a direction to pay a sum of money, would constitute a case in which the "act or duty" is no longer in the power of the offender to perform (see *King v Barnes,* 113 NY 476, 481; *People ex rel. Davis v Compton,* 1 Duer 512, 520-521, affd 9 NY 263; *Fenlon v Dempsey,* 7 NYS 435). Such a violation is classified as a civil contempt under the Judiciary Law, although due process constraints may require the same circumspection exercised under criminal contempt provisions of the Judiciary Law if the court decides to impose a definite sentence of imprisonment (see *Colombo v New York,* 405 US 9, 11; *Gompers v Bucks Stove & Range Co.,* 221 US 418, 443-444; Dobbs, Contempt of Court: A Survey, 56 Cornell L Rev 183, 236-237, 243-244). It is clear that in the case under review the court imposed a definite 10-day term of imprisonment upon plaintiff for failing to do an act (payment of support) that was still in his power to perform. Inasmuch as this imposition of punishment exceeded the court's authority as conferred by subdivision 1 of section 774 of the Judiciary Law, it must be vacated. Although it is apparent from the record before us that plaintiff may indeed have committed perjury sufficient to justify this court's discretionary substitution of perjury for nonpayment of child support as the basis of the 10-day definite sentence, that phase of the matter has been referred to the District Attorney for prosecution and we therefore decline to take such action. O'Connor, J. P., Bracken, Brown and Niehoff, JJ., concur.